IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


DARRELL PENDLEY,                             3:11-CV-6131-BR

        Plaintiff,

                                             OPINION AND ORDER

v.

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

        Defendant.



**ALAN STUART GRAF**
Alan Stuart Graf P.C.
316 Second Road
Summertown, TN 38483
(931) 964-3123

        Attorneys for Plaintiff


**S. AMANDA MARSHALL**
United States Attorney
**ADRIAN L. BROWN**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003


1  -  OPINION AND ORDER

**DAVID MORADO**
Regional Chief Counsel
**L. JAMALA EDWARDS**
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA  98104-7075
(206) 615-3749

         Attorneys for Defendant


**BROWN, Judge.**

     Plaintiff Darrell Pendley seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which the ALJ denied Plaintiff's applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act respectively.  This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

     Based on the foregoing, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Opinion and Order.


### ADMINISTRATIVE HISTORY

     Plaintiff filed his protective applications for SSI and DIB


2   -  OPINION AND ORDER

on May 16, 2008.  Tr. 127-34.[1]  His applications were denied
initially and on reconsideration.  Tr. 68-80.  An Administrative
Law Judge (ALJ) held a hearing on September 21, 2009.  Tr. 24.
At the hearing, Plaintiff was represented by an attorney.
Tr. 24.  Plaintiff and a Vocational Expert (VE) testified at the
hearing.  Tr. 26-67.

The ALJ issued an opinion on November 3, 2009, in which he
found Plaintiff is not disabled and, therefore, is not entitled
to benefits.  Tr. 11-23.  The ALJ's decision became the final
decision of the Commissioner on February 9, 2011, when the
Appeals Council denied Plaintiff's request for review.  Tr. 1-3.

On April 14, 2011, Plaintiff filed a Complaint in this Court
seeking review of the Commissioner's decision.


## BACKGROUND

Plaintiff was forty-four years old at the time of the
hearing before the ALJ.  Tr. 29.  Plaintiff finished the ninth
grade and did not obtain a GED.  Tr. 51-52.  He has performed
past work as a delivery-truck driver, carpet cleaner, industrial
cleaner, gas-station clerk, and painter.  Tr. 61.  Plaintiff
alleges a disability onset date of June 21, 2005.  Tr. 69.

Plaintiff has been diagnosed with diabetes, diabetic

---

[1] Citations to the official transcript of record filed by the
Commissioner on September 15, 2011, are referred to as "Tr."

3  -  OPINION AND ORDER

neuropathy, hypertension, asthma, adhesive capulitis with arthritic changes in the left shoulder, pancreatitis, alcoholism, depression, bipolar affective disorder, and generalized anxiety disorder. Tr. 233, 288, 294, 397, 402, 410-12, 421-23, 430, 512, 574, 581. Plaintiff has a history of head injury and encephalomalacia, seizures, carotid artery stenosis, right carotid endarterectomy, and ischemic infarcts. Tr. 236, 245, 273, 298-301, 378, 397, 421, 504, 597.

Plaintiff alleges he is disabled due to pain, weakness, and numbness in his left shoulder, arm, hand, and leg; pain in his lower back and right foot; seizures; dizziness; and fatigue, all of which limit his ability to sit; to stand; to walk; to grasp; to lift; to carry; to use his hands; to bend; to squat; to reach; to kneel; to talk; to hear; to see; to complete tasks; to understand; to maintain concentration, persistence, and pace; and to get along with others. Tr. 35-55, 176-90.

Except when noted, Plaintiff does not challenge the ALJ's summary of the medical evidence. After reviewing the medical records, the Court adopts the ALJ's summary of the medical evidence. *See* Tr. 14-21.


## STANDARDS

The initial burden of proof rests on the claimant to establish disability. *Ukolov v. Barnhart*, 420 F.3d 1002, 1004

(9th Cir. 2005).  To meet this burden, a claimant must demonstrate his inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  The Commissioner bears the burden of developing the record.  *Reed v. Massanari*, 270 F.3d 838, 841 (9th Cir. 2001).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g).  *See also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).  "Substantial evidence means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)(internal quotations omitted).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities.  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).  The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision.  *Robbins,* 466 F.3d at 882.  The Commissioner's decision must be upheld even

if the evidence is susceptible to more than one rational interpretation. *Webb v. Barnhart*, 433 F.3d 683, 689 (9th Cir. 2005). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

### I. The Regulatory Sequential Evaluation

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). *See also* 20 C.F.R. §§ 404.1520, 416.920. Each step is potentially dispositive.

In Step One, the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006). *See also* 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).

In Step Two, the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

In Step Three, the claimant is disabled if the Commissioner

determines the claimant's impairments meet or equal one of a number of listed impairments that the Commissioner acknowledges are so severe they preclude substantial gainful activity. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, he must assess the claimant's Residual Functional Capacity (RFC). The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations. 20 C.F.R. §§ 404.1520(e), 416.920(e). *See also* Social Security Ruling (SSR) 96-8p. "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule." SSR 96-8p, at *1. In other words, the Social Security Act does not require complete incapacity to be disabled. *Smolen v. Chater*, 80 F.3d 1273, 1284 n.7 (9th Cir. 1996). The assessment of a claimant's RFC is at the heart of Steps Four and Five of the sequential analysis engaged in by the ALJ when determining whether a claimant can still work despite severe medical impairments. An improper evaluation of the claimant's ability to perform specific work-related functions "could make the difference between a finding of 'disabled' and 'not disabled.'" SSR 96-8p, at *4.

In Step Four, the claimant is not disabled if the
Commissioner determines the claimant retains the RFC to perform
work he has done in the past.  *Stout*, 454 F.3d at 1052.  *See also*
20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

If the Commissioner reaches Step Five, he must determine
whether the claimant is able to do any other work that exists in
the national economy.  *Stout*, 454 F.3d at 1052.  *See also* 20
C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  Here the burden
shifts to the Commissioner to show a significant number of
jobs exist in the national economy that the claimant can do.
*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  The
Commissioner may satisfy this burden through the testimony of a
VE or by reference to the Medical-Vocational Guidelines set forth
in the regulations at 20 C.F.R. part 404, subpart P, appendix 2.
If the Commissioner meets this burden, the claimant is not
disabled.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).


## **ALJ'S FINDINGS**

At Step One, the ALJ noted Plaintiff alleges an onset date
of June 21, 2005.  Tr. 13.  The record, however, reflects
Plaintiff continued to work until September 2007.  Tr. 13.  The
ALJ found "it is unclear whether" Plaintiff has engaged in
substantial gainful activity since June 21, 2005.  Tr. 13.
Nevertheless, the ALJ concluded Plaintiff had not engaged in

8   -   OPINION AND ORDER

substantial gainful activity "for the entire period at issue" and
proceeded to Step Two in the sequential evaluation.  Tr. 13.

At Step Two, the ALJ found Plaintiff has the severe
impairments of:

> history of traumatic brain injury; history of
> transient ischemic attack; history of carotid
> artery stenosis, status post carotid
> endarterectomy, diabetes mellitus; left upper
> extremity tendon tear; bipolar disorder,
> possibly related to old encephalomalacia in
> the temporal lobe; history of alcohol abuse.

Tr. 13-14.

At Step Three, the ALJ concluded Plaintiff's impairments do
not singly or in combination meet or equal a Listed Impairment.
*See* 20 C.F.R. part 404, subpart P, appendix 1.  The ALJ found
Plaintiff had the RFC to

> perform light work as defined in 20 C.F.R.
> 404.1567(b) and 416.967(b) except that the
> claimant is limited to occasional pulling
> with the left upper extremity and occasional
> fingering with the left hand.  He should
> never climb ladders, ropes, or scaffolds, but
> occasionally can climb ramps and stairs.  He
> is limited to occasional crawling.  He should
> avoid exposure to heavy machinery and
> unprotected heights.  In terms of mental
> limitations, the claimant is capable of
> occasional social interaction with the public
> and co-workers.

Tr. 17.

At Step Four, the ALJ concluded Plaintiff is unable to
perform any of his past relevant work.  Tr. 21-22.

At Step Five, the ALJ concluded Plaintiff has a sufficient

RFC to perform jobs that exist in significant numbers in the
national economy.  Tr. 22.  Specifically, the ALJ found Plaintiff
has the ability to perform jobs such as linen grader; order
clerk, food and beverage; and escort-vehicle driver.  Tr. 22-23.


## DISCUSSION

Plaintiff contends the ALJ erred by (1) failing to include
all of Plaintiff's limitations in his assessment of Plaintiff's
RFC; (2) improperly discrediting Plaintiff's subjective symptom
testimony; and (3) failing to meet his burden at Step Five to
show Plaintiff can perform other work that exists in significant
numbers in the national economy.

### I.    Plaintiff's RFC.

Plaintiff contends the ALJ erred when he failed to include
in his assessment of Plaintiff's RFC the limitations related to
Plaintiff's left-shoulder impairment and his stroke residuals
such as the required use of a cane and the limited use of his
left arm.

The ALJ, in fact, found Plaintiff had severe impairments
related to his ischemic attacks and his left-shoulder tendon tear
and included in his assessment of Plaintiff's RFC those
limitations relating to Plaintiff's use of his left arm.  Tr. 13-
14, 17.  Specifically, the ALJ concluded Plaintiff is limited to
occasional pulling with his left arm and to occasional fingering

with his left hand.  Tr. 17.

Plaintiff contends the ALJ should have further limited Plaintiff's use of his left arm and included a limitation based on Plaintiff's need for a cane to walk or to sustain a standing position.

**A.   Stroke Residuals.**

Plaintiff contends his history of strokes has left him with left-sided weakness that is more severe than the limitations assessed by the ALJ.  Plaintiff specifically contends the ALJ should have included Plaintiff's need for a cane to ambulate based on the prescription provided by Plaintiff's Nurse Practitioner, James Suiter.  *See* Tr. 426 (NP Suiter provided Plaintiff with "a medical certificate of need/supply voucher for a walking cane").

The ALJ concluded the clinical findings and treatment records did not support Plaintiff's stated level of left-sided weakness and dysfunction.  Tr. 18-19.  The ALJ noted treatment records following Plaintiff's surgical treatment for his May 2008 ischemic attacks indicate Plaintiff recovered well.  Tr. 18, 382 (doing very well post-surgery), 383 (left arm weakness improved after surgery).  The ALJ specifically pointed to the treatment records of Plaintiff's treating physician, Miriam M. Gage, M.D., who noted Plaintiff's sensory and motor examinations were intact. Tr. 18.  The record reflects numerous similar findings by

Plaintiff's physicians that reflect Plaintiff's upper and lower extremity strength and motor skills were intact despite his complaints of weakness. *See, e.g.,* Tr. 237, 593, 614. Moreover, Plaintiff's physicians found Plaintiff ambulates without difficulty and that he exaggerates his gait. *See, e.g.,* Tr. 517 (ambulates without difficulty), 532 (normal gait and lower extremity strength), 595 (exaggerated gait). In fact, Plaintiff's physicians described Plaintiff's left-sided weakness as atypical, questionable, and exaggerated. *See, e.g.,* Tr. 343-44, 347 ("probable giveway weakness"; "appears to be exaggerated" despite clinical ischemic findings), 504 (atypical weakness), 633 ("questionable weakness on the left side"), 693 ("atypical in that the strokes do not appear to be affecting [Plaintiff's] motor fibers"; "questionable weakness on the left side . . . strength is actually normal"). The Court did not locate any other references by Plaintiff's treating physicians to Plaintiff's need for a cane to walk or to stand.

On this record, the Court concludes the ALJ's decision not to include additional limitations based on Plaintiff's alleged left-side weakness resulting from strokes is supported by substantial evidence in the record.

**B.    Left-Shoulder Tendon Tear.**

Plaintiff also contends the ALJ erred by not including additional limitations on Plaintiff's use of his left shoulder

resulting from a torn tendon.

As noted, the ALJ found Plaintiff's left-shoulder tendon tear to be a severe impairment and limited his use of that arm for pulling.  The ALJ concluded the record did not support additional limitations because treatment of Plaintiff's shoulder had proven effective to permit Plaintiff to use his shoulder normally with minimal pain.  Tr. 19.

Based on Plaintiff's complaints of left-shoulder pain, Thomas J. Mascha, M.D., one of Plaintiff's treating physicians, referred Plaintiff to physical therapy in February 2009. Tr. 412.  In March Dr. Mascha gave Plaintiff a cortisone injection in his left shoulder as part of Dr. Mascha's "conservative protocol" for treating Plaintiff's "degenerative superior labral tear."  Tr. 401.  On May 7, 2009, Physician's Assistant (PA) Molly C. Emberlin saw Plaintiff for a follow-up examination of his left shoulder.  Tr. 498-99.  Plaintiff reported to PA Emberlin that the cortisone injection provided "significant benefit."  Tr. 498.  Plaintiff indicated the physical therapy was "helping a lot," that he had improved his range of motion, and that the pain medication was controlling his pain and allowing him to sleep and to perform physical therapy. Tr. 498.  PA Emberlin opined Plaintiff had made significant progress, recommended Plaintiff continue with physical therapy and home exercises, and concluded Plaintiff would likely be able

13  -  OPINION AND ORDER

to resume normal use of his shoulder.  Tr. 499.

On June 25, 2009, Dr. Mascha again examined Plaintiff's shoulder.  Tr. 492.  Plaintiff reported "his function during the day is relatively good" and noted "some discomfort, particularly in the evening with using the shoulder fairly normally." Tr. 492.  Dr. Mascha opined Plaintiff's symptoms would likely resolve in six to eight weeks, instructed Plaintiff to continue with home exercises, and released Plaintiff to return only on a per-need basis.  Tr. 492.

Although Plaintiff points to an additional cortisone injection in October 2010 as evidence that Plaintiff's symptoms worsened, Dr. Mascha indicated he would use such treatment for "mild recurrent symptoms" and would perform other, more significant treatment if Plaintiff had worsening symptoms. Tr. 492, 578.  On July 14, 2010, the record reflects Plaintiff had returned to a full range of motion in his left shoulder on examination by NP Suiter.  Tr. 595.

On this record the Court concludes the ALJ's decision not to include additional limitations in Plaintiff's RFC related to his left-sided weakness and left-shoulder tendon tear is supported by substantial evidence in the record.

## II.  **Plaintiff's Credibility**.

Plaintiff contends the ALJ erred when he failed to give clear and convincing reasons for rejecting Plaintiff's specific

14  -  OPINION AND ORDER

testimony concerning his left-sided weakness and limited use of
his left hand as not credible.

In *Cotton v. Bowen* the Ninth Circuit established two
requirements for a claimant to present credible symptom
testimony:  The claimant must produce objective medical evidence
of an impairment or impairments, and he must show the impairment
or combination of impairments could reasonably be expected to
produce some degree of symptom.  *Cotton*, 799 F.2d 1403, 1407 (9th
Cir. 1986).  The claimant, however, need not produce objective
medical evidence of the actual symptoms or their severity.
*Smolen*, 80 F.3d at 1284.

If the claimant satisfies the above test and there is not
any affirmative evidence of malingering, the ALJ can "reject the
claimant's testimony about the severity of his symptoms only by
offering specific, clear and convincing reasons for doing so."
*Williamson v. Comm'r of Soc. Sec.*, No. 10-35730, 2011 WL 2421147
(9th Cir. June 17, 2011)(quoting *Lingenfelter v. Astrue,* 504 F.3d
1028, 1036 (9th Cir. 2007)).  General assertions that the
claimant's testimony is not credible are insufficient.  *Parra v.
Astrue,* 481 F.3d 742, 750 (9th Cir. 2007).  The ALJ must identify
"what testimony is not credible and what evidence undermines the
claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d
821, 834 (9th Cir. 1995)).  The ALJ's credibility finding "must
contain specific reasons for the finding on credibility,

supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, at *2.

Plaintiff testified he suffers from significant limitations on the use of his left hand and he continues to suffer from weakness on the left side of his body. Tr. 35-38, 49-50, 58.

As noted, the ALJ concluded Plaintiff has limitations on the use of his left hand that permit him to only occasionally finger with his left hand. The ALJ, however, concluded:

> Considering the objective medical evidence, the claimant's inconsistent self report, his work activity, his treatment noncompliance, his improvement when he complies with treatment, and the opinions given at least some weight above, all of which suggest greater sustained capacity than described in testimony, the undersigned concludes that the claimant's subjective complaints and alleged limitations are not fully persuasive and that he retains the capacity to perform work activities with the limitations set forth [in Plaintiff's RFC].

Tr. 21.

Based on his review of the record, the ALJ concluded the record did not support the extent of Plaintiff's stated limitations. Tr. 18-21. As noted, Plaintiff's physicians found Plaintiff had greater strength in his left extremities than he reported; found those symptoms to be "atypical," "questionable,"

and otherwise inconsistent with clinical findings; and opined Plaintiff exaggerated his symptoms on physical examination.

The Court concludes the ALJ's reason for finding Plaintiff's subjective-symptom testimony regarding his limited use of his left extremities not entirely credible is clear and convincing and is supported by substantial evidence in the record. Accordingly, the Court need not assess the remaining bases for the ALJ's credibility determination.

**III. Step Five.**

Plaintiff contends the ALJ failed to meet his burden at Step Five on two grounds: (1) the ALJ erred by relying on testimony from the VE that was inconsistent with the *Dictionary of Occupational Titles* (DOT) regarding the jobs of linen grader and "order clerk, food and beverage" and (2) the ALJ did not show Plaintiff is capable of performing the job of escort-vehicle driver.

When the ALJ relies on the testimony of a VE or vocational specialist (VS) with respect to "the requirements of a particular job," an ALJ may not rely on that testimony without inquiring whether the testimony of the VE or VS is consistent with the DOT. *Massachi v. Astrue*, 486 F.3d 1149, 1152-54 (9th Cir. 2007). *See also SSR* 00-4p (*available at* 2000 WL 1898704). The ALJ has an "affirmative responsibility" to inquire into any possible conflict with the DOT and, if such a conflict exists, to

17  -  OPINION AND ORDER

determine whether the VE's "explanation of the conflict is reasonable and whether a basis exists for relying on the expert" rather than the DOT. *Massachi*, 486 F.3d at 1153.

Social Security Ruling 00-4p requires:

> Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.
>
> Neither the DOT nor the VE or VS evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than on the DOT information.

SSR 00-4p, at *2.

**A.    Linen Grader and Order Clerk.**

Plaintiff contends the positions of linen grader and "order clerk, food and beverage," each require "frequent" reaching, handling, and fingering despite the ALJ's limitation of Plaintiff to occasional fingering with his left hand. *See DOT,* 181, 261 (4th ed. 1991); U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles*, 203, 335 (1993)(SCO)(setting out the physical demands of

18  -  OPINION AND ORDER

both positions and referenced in accordance with SSR 00-4p).

Thus, Plaintiff contends the VE's testimony that Plaintiff can

perform these occupations despite his limitation to only

occasional fingering is inconsistent with the DOT.

The Commissioner does not challenge the DOT classification

of the physical demands of linen grader and order clerk.   The

Commissioner, however, contends the ALJ may properly rely on the

VE's testimony despite any inconsistency.

Although the ALJ asked the VE to explain any difference

between the VE's testimony and the DOT, the VE did not point out

any such discrepancies.   According to *Massachi* and SSR 00-4p, the

ALJ may not rely on VE testimony that is inconsistent with the

DOT, including its companion SCO, without eliciting a reasonable

explanation for the conflict.   The ALJ did not do so here, and,

therefore, his reliance on that part of the VE's testimony that

conflicts with the DOT was in error.

**B.   Escort-Vehicle Driver.**

Plaintiff contends the ALJ did not meet his burden to show

Plaintiff can, in fact, perform the job of escort-vehicle driver.

Plaintiff notes the record reflects Plaintiff has not had a

driver's license since 2002.   Tr. 29-30.   Plaintiff also states

he has never held the required commercial driver's license

necessary to perform the job of escort-vehicle driver and that he

could not get any license to drive a vehicle based on his medical

history of seizures.  Thus, Plaintiff contends the ALJ has not
met his burden to show Plaintiff can meet the demands of the
position.  Plaintiff cites *Berry v. Astrue* to support his
contention that the ALJ erred by not offering support for his
conclusion that Plaintiff could obtain the necessary license to
perform the escort-vehicle driver position.  622 F.3d 1228 (9th
Cir. 2010)(concluding the ALJ erred at Step Five when he failed
to address the fact that the plaintiff's medications may have
made him ineligible for a position as a courier driver, which the
plaintiff may not have been able to safely perform due to his
required medications).

Although the Commissioner notes Plaintiff admitted he has
not had a license since 2002 because of his failure to pay child
support as required, Plaintiff contends that does not undermine
his argument that he is medically unable to drive.  *See* Tr. 29-
30.  In any event, the record reflects Plaintiff does not have a
license, has not had one for roughly ten years, and the record
does not contain any evidence as to whether Plaintiff's
impairments and his risk of seizures in particular might preclude
his ability to obtain a driver's license.  The VE's testimony
appears to have been limited to whether Plaintiff had the
physical ability to drive an automobile.  As in *Berry*, the Court
concludes on this record that the ALJ failed to meet his burden
to show Plaintiff could perform the position of escort-vehicle

driver because he did not demonstrate Plaintiff's medical impairments would permit Plaintiff to obtain the required license and to safely perform the requirements of that occupation.

### REMAND

The decision whether to remand for further proceedings or for immediate payment of benefits generally turns on the likely utility of further proceedings.  *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000).  When "the record has been fully developed and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits."  *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).

The decision whether to remand this case for further proceedings or for the payment of benefits is a decision within the discretion of the court.  *Harman*, 211 F.3d 1178.

The decision whether to remand for further proceedings or for immediate payment of benefits generally turns on the likely utility of further proceedings.  *Id.* at 1179.  The court may "direct an award of benefits where the record has been fully developed and where further administrative proceedings would serve no useful purpose."  *Smolen*, 80 F.3d at 1292.

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed."  *Harman*, 211 F.3d at 1178.  The

21  -  OPINION AND ORDER

Court should grant an immediate award of benefits when:

> (1) the ALJ has failed to provide legally
> sufficient reasons for rejecting . . .
> evidence, (2) there are no outstanding issues
> that must be resolved before a determination
> of disability can be made, and (3) it is
> clear from the record that the ALJ would be
> required to find the claimant disabled were
> such evidence credited.

*Id.* The second and third prongs of the test often merge into a single question: Whether the ALJ would have to award benefits if the case were remanded for further proceedings. *Id.* at 1178 n.2.

Because the ALJ did not require an explanation about the conflict between the VE's testimony and the DOT, this Court "cannot determine whether the ALJ properly relied on [the VE's] testimony." *See id*. at 1154. In turn, the Court "cannot determine whether substantial evidence supports the ALJ's finding" that the claimant can perform other work and, as a result, the matter must be remanded. *Id.*

Accordingly, because the Court has determined the ALJ erred with respect to his reliance on the VE testimony and did not meet his burden to show Plaintiff can perform other work that exists in significant number in the national economy, the Court remands this matter for further administrative proceedings consistent with this opinion and order for the purpose of obtaining additional testimony by a VE as to whether Plaintiff is capable of performing the job requirements of linen grader; order clerk, food and beverage; and/or escort-vehicle driver.

22  -  OPINION AND ORDER

## **CONCLUSION**

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Opinion and Order.

IT IS SO ORDERED.

DATED this 19th day of June, 2012.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge


23  -  OPINION AND ORDER